JACOB WOOLVERTON *et al.*

*v.*

GEORGE H. TAYLOR *et al.*

*Filed at Ottawa March 29, 1890.*

| 132 | 197 |
| 37a | 360 |
| 132 | 197 |
| 145 | 47 |
| 132 | 197 |
| 157 | 486 |
| 46a | 379 |
| 132 | 197 |
| 54a | 382 |
| 132 | 197 |
| 83a | 651 |

| 132 | 197 |
| 86a | 178 |

1. CORPORATIONS—*corporate indebtedness—in excess of capital stock—power of the officers of the corporation, and of their individual liability to creditors.* In the absence of statutory prohibition, it is not unlawful for the officers of a corporation to contract debts in excess of its capital stock, but it may, like individuals, incur debts to the full extent of its credit. The statute declaring the individual liability of the officers of a corporation to creditors, under certain circumstances, does not prohibit the contracting of indebtedness in excess of its capital stock, nor does it inflict a penalty on the directors and officers for so doing. It

simply creates a new right of civil action against them in favor of the creditors of the corporation.

2. SAME—*conditions to fix the liability of corporate officers.* Where a stock corporation incurs indebtedness in excess of its capital stock, the directors and officers assenting thereto are not liable to be proceeded against by creditors to recover such excess until such creditors have first obtained judgment against the corporation. This statutory liability of the officers of the corporation is *stricti juris,* and does not attach so long as the debt can be made out of the corporation.

3. SAME—*rights of the general creditors—as against the corporate officers.* The statute makes the officers who assent to the increase of the indebtedness of the corporation beyond its capital stock, guilty of a violation of their trust, and, so far as this excess is necessary, they are required to make good the debts of the creditors who have suffered by their breach of trust. This liability constitutes a fund for the benefit of all the creditors who are entitled to share in it, in proportion to the amount of their debts, so far as it may be necessary to pay such debts. This distribution must be made in a court of equity.

4. It does not follow, because the creditor who files his bill must allege and prove the corporation in default as to his debt, that he can not maintain the bill until all debts against the corporation are due. On proper bill by one creditor, the court has power to bring before it, the corporation, all its officers who assented to the excessive indebtedness, as well as all its creditors, and ascertain the excess of the indebtedness over the capital stock, the amount of this which each officer may have assented to, and the extent to which the funds of the corporation may be resorted to for the payment of the debts, and also the number and the names of the creditors, the amount of their several debts, to determine the sum to be recovered of the officers, and apportion it among the creditors.

5. LIMITATIONS—*in respect to officers of corporation—as to liability for debts in excess of capital stock.* Section 16, of chapter 32, of the Revised Statutes, which provides, "if the indebtedness of any stock corporation shall exceed the amount of its capital stock, and directors and officers of such corporation assenting thereto shall be personally and individually liable for such excess to the creditors of such corporation," is not penal, within the meaning of section 12 of the Statute of Limitations, but creates an obligation similar, in many respects, to that of sureties.

6. The statute does not mean that the officers of a stock corporation shall only become liable for one act of assenting to excessive indebtedness during the life of the corporation, but the amount in excess may continue to be increased, from time to time, by different officers, running over a period of years. The officers, if liable at all, are liable

to all the creditors of the corporation, without regard to the time when they became such, and the five years' statute of limitations begins to run only from the time of the maturity of the debts created in excess of the capital stock. The creditor is not bound to look to the collection of his debt until it is due.

7. The officers of a stock corporation, after having contracted corporate indebtedness in excess of its capital stock, issued twelve promissory notes, amounting to over $10,000. More than five years after the issue of such notes, the holders thereof filed their bill in equity to enforce the individual liability of the directors and officers assenting to such debts, but within five years after the maturity of the notes: *Held,* that the suit was not barred by either the two or the five years' limitation, and that the five years' limitation did not commence to run until the maturity of the notes.

8. CHANCERY—*enforcing a penalty.* It is a universal rule, in equity, never to enforce either a penalty or a forfeiture. Therefore, this court, in holding that the liability created by section 16, chapter 32, of the Revised Statutes, can be enforced only in a court of equity, in effect decided that the suit is not for the recovery of a penalty.

9. PENALTY—*what constitutes.* A penalty is in the nature of punishment for the non-performance of an act, or for the performance of an unlawful act. It involves the idea of punishment, whether enforced by a civil or criminal procedure.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Mr. CONSIDER H. WILLETT, for the appellants:

Section 16, chapter 32, of the Revised Statutes, contains no prohibitory or negative words forbidding the creation of an indebtednesss of the corporation in excess of its capital stock; therefore such statutory liability is not a penalty, but a contract liability. Potter's Dwarris on Stat. 74; 1 Kent's Com. 467; Sedgwick on Stat. and Const. Law, 41; English on Interpretation of Statutes, sec. 450; *Neal* v. *Briggs,* 12 Ga. 104; *Diversey* v. *Smith,* 103 Ill. 378; *Queenan* v. *Palmer,* 117 id. 619; *Thompson* v. *Meisser,* 108 id. 359; *Hicks* v. *Burns,* 38 N. H. 141.

Appellees' cases of "the exact point decided" are penalties created by the use of negative words, enforced by action of debt. *Sturges* v. *Burton,* 8 Ohio St. 215; *Bank* v. *Price,* 33 Md. 487.

The section seeking construction does not create a penalty, but a contract or statutory liability, because the only remedy to enforce such liability is in equity. *Low* v. *Buchanan,* 94 Ill. 76; *Horner* v. *Henning,* 93 U. S. 228; *Anderson* v. *Speers,* 21 Hun, 568; *Queenan* v. *Palmer,* 117 Ill. 619.

As to a penalty, the Statute of Limitations commences to run from the omission or commission of the act which constitutes the penalty.

If such statutory liability is a contract, the Statute of Limitations begins to run, not from the time such statutory obligation is incurred, but from the time, according to the conditions of such obligation, that performance or payment is required.

Debt must be due, to maintain an action. Wood on Limitations, secs. 117, 149, p. 324; Angell on Limitations, (6th ed.) p. 54; Story's Eq. Jur. secs. 529, 1520; *Moore* v. *Caldwell,* 8 Rich. Eq. 22; *Davidson* v. *Rankin,* 34 Cal. 503; *Glenn* v. *Williams,* 60 Md. 93; *Curry* v. *Woodward,* 53 Ala. 376; *Marsteller* v. *Marsteller,* 93 Pa. St. 350; *Dickerson* v. *Derrickson,* 39 Ill. 573; *Adams* v. *Clarke,* 14 Vt. 9; *Norton* v. *Hall,* 41 id. 471; *Tillotson* v. *Rose,* 11 Metc. 298; *Glenn* v. *Semple,* 80 Ala. 159; *In re Leiman,* 32 Md. 225.

The shareholders' liability is held to be that of partners. *Buchanan* v. *Meisser,* 105 Ill. 638; *Thompson* v. *Meisser,* 108 id. 359.

Primary liability is created by the statute. *Queenan* v. *Palmer,* 117 Ill. 619; *Fuller* v. *Ledden,* 87 id. 310; *Allen* v. *Sewell,* 2 Wend. 327; *Young* v. *Rosenbaum,* 39 Cal. 649; *Perkins* v. *Saunders,* 56 Miss. 733; *Kincaid* v. *Devinelle,* 59 N. Y. 551; *Norris* v. *Johnson,* 34 Md. 485; *Norris* v. *Wenschall,* id.

492; *Root* v. *Sinnock*, 120 Ill. 350; *Schalucky* v. *Field*, 124 id. 617; *Flash* v. *Conn.* 16 Fla. 428; 109 U. S. 371.

Creditor's bill: *Harper* v. *Manufacturing Co.* 100 Ill. 225; *Longley* v. *Little*, 26 Me. 162; *Preston* v. *Colby*, 117 Ill. 477; *Handy* v. *Draper*, 89 N. Y. 334; *Bank* v. *Bliss*, id. 338; *Bank* v. *Hopkins*, 111 Pa. St. 328.

The insolvency of a corporation does not make unmatured debts due. *Insurance Co.* v. *Gray*, 122 Ill. 630; *Scoville* v. *Thayer*, 105 U. S. 142; *Glenn* v. *Williams*, 60 Md. 93; *Glenn* v. *Saxton*, 68 Cal. 353; *Insurance Co.* v. *Bank*, 68 Ill. 348; *Glenn* v. *Semple*, 80 Ala. 159; *DeCamp* v. *Alward*, 52 Ind. 468; *Moseby* v. *Burrow*, 52 Texas, 396; *Kincaid* y. *Devinelle*, 59 N. Y. 548; *Manufacturing Co.* v. *Langdon*, 29 Pick. 49.

If the section creates a penalty, it is barred in two years; but if it creates a contract or statutory liability, it is barred by the five or ten years' limitation laws.

A liability created by statute is a contract in writing. Wood on Limitations, secs. 36, 39; *Terry* v. *Little*, 101 U. S. 216; *Hargroves* v. *Chambers*, 30 Ga. 580; *Lane* v. *Morris*, 8 id. 478; 10 id. 165; *Neal* v. *Briggs*, 12 id. 104; *Cowenhoven* v. *Middlesex Freeholders*, 44 N. J. L. 232; *Railway Co.* v. *Goode*, 13 C. B. 76; Eng. C. L. 826; *Shepherd* v. *Hills*, 11 Ex. 55; *VanHook* v. *Whitlock*, 3 Paige, 409; *Jones* v. *Pope*, 1 Saund. 36; *Talory* v. *Jackson*, Croke, (Charles) 513.

If, contrary to what we have tried to show, the cause of action accrued when the indebtedness exceeded its capital stock, and not when such indebtedness became due, then the cause of action was fraudulently concealed until the insolvency of the corporation. Rev. Stat. sec. 22, chap. 88; *Henry County* v. *Drainage Co.* 52 Ill. 299; Angell on Limitations, 180; *O'Dell* v. *Burnham*, 61 Wis. 562; *McIntosh* v. *Saunders*, 68 Ill. 128; *Wear* v. *Skinner*, 46 Md. 257; *Moore* v. *Moore*, 56 Cal. 89; *Bank* v. *Perry*, 144 Mass. 313; *Bank* v. *Bank*, 91 N. Y. 106; *Tompkins* v *Hollister*, 60 Mich. 470.

Mr. EDWARD W. RUSSELL, and Mr. EDWARD F. GORTON, for the appellees:

That the statute is penal, see Burrill's Law Dic. "Penalty;" Potter's Dwarris, 74; *Diversey* v. *Smith*, 103 Ill. 378; *Bank* v. *Bliss*, 35 N. Y. 416; *Kretzer* v. *Woodson*, 19 Mo. 330; *Wadham* v. *Sprague*, 13 Vt. 510; *Horner* v. *Henning*, 93 U. S. 228.

The liability is either a contract or penalty. The legislature can not make a contract for a party. Cooley's Const. Lim. 365, 369; 1 Parsons on Contracts, 64.

The individual liability of stockholders is purely statutory, and such statute being in derogation of the common law, should be strictly construed. *Terry* v. *Little*, 101 U. S. 216; *Carroll* v. *Green*, 92 id. 509; *Bonnell* v. *Griswold*, 80 N. Y. 128; *Steam Engine Co.* v. *Hubbard*, 101 U. S. 188; *Pier* v. *Hanmore*, 86 N. Y. 95; *Lowry* v. *Inman*, 46 id. 119; *Chase* v. *Lord*, 77 id. 1; *Carr* v. *Inglehart*, 3 Ohio St. 457; *Freiland* v. *McCulloch*, 43 Am. Dec. 685.

Statutes are penal which impose a duty on directors to perform, or forbid the doing of certain acts contrary to public policy, and which statutes subject the director violating, to pecuniary loss or punishment. So statutes are penal which inflict a liability on directors for creating corporate debts in excess of a prescribed limit. *Sturges* v. *Burton*, 8 Ohio St. 215; *Bank* v. *Price*, 33 Md. 487; *Kretzer* v. *Woodson*, 19 Mo. 327; *Irvine* v. *McKeon*, 23 Cal. 427; *Wadham* v. *Sprague*, 43 Vt. 510.

Liability of directors for corporate debts, for failing to make required reports, or for making a false report, is penal. *Bank* v. *Bliss*, 35 N. Y. 416; *Halsey* v. *McLean*, 12 Allen, 438; *Derrickson* v. *Smith*, 3 Dutch. (27 N. J.) 170; *Bank* v. *Brown*, 30 N. J. Eq. 478; *Gregory* v. *Bank*, 3 Col. 332; *Miller* v. *White*, 50 N. Y. 137; *Shaler Hall Co.* v. *Bliss*, 3 Barb. 309; *Duckworth* v. *Roach*, 8 Daly, 159; *Breitung* v. *Lindauer*, 37 Mich. 217; *Mitchell* v. *Hotchkiss*, 48 Conn. 8; *Steam Engine Co.* v. *Hubbard*, 101 U. S. 192; *Chase* v. *Curtis*, 113 id. 452; *East-*

*erly* v. *Barber*, 65 N. Y. 252; *Veeder* v. *Baker*, 83 id. 156; *Knox* v. *Baldwin*, 80 id. 610; *Pier* v. *Hanmore*, 86 id. 256; *Stokes* v. *Stickney*, 96 id. 323; *Boyer* v. *Thurber*, 2 N. Y. 789; *Iron Co.* v. *Pierce*, 4 Biss. 327.

Liability of directors for making false certificate that the capital stock is paid in, is penal. *Stebins* v. *Edmunds*, 12 Gray, 203; *Brackett* v. *Griswold*, 103 N. Y. 425.

For making dividends which impair the capital stock: *Hill* v. *Frazer*, 22 Pa. St. 320.

For making dividends when the corporation is insolvent: *Rorke* v. *Thomas*, 56 N. Y. 559.

For proceeding to business before paying up capital stock: *Richardson* v. *Akin*, 87 Ill. 138; *Weidenger* v. *Spruance*, 101 id. 478; *Junker* v. *Kuhnen*, 18 Bradw. 478; *Gridley* v. *Barnes*, 103 Ill. 211; *Diversey* v. *Smith*, id. 378; *Harper* v. *Manufacturing Co.* 100 id. 225.

For failing to file certain certificates: *Wiles* v. *Suydam*, 64 N. Y. 173; *Wood* v. *Wicks*, 7 Lea, 40; *Cady* v. *Smith*, 12 Neb. 628.

For failure to publish certain reports: *Cable* v. *McCune*, 26 Mo. 380.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This was a bill in chancery, by appellants, against appellees, to enforce an alleged liability against the said George H. Taylor and William H. Longley, as directors and president and treasurer of a corporation called "George H. Taylor & Co.," under section 16, chapter 32, of the Revised Statutes, entitled "Corporations." The bill is on behalf of appellants and all other creditors of said corporation who shall come in and contribute to the expense of the suit. It was filed in the Superior Court of Cook county on the 12th day of January, 1888.

It appears from the allegations of the bill, that said George H. Taylor & Co. was duly organized as a corporation under

the laws of this State, for the purpose of manufacturing, purchasing and selling paper bags, and other articles pertaining to the paper trade, and that while engaged in carrying on its. said business, it executed twelve certain promissory notes, payable to the order of Lucius Clark & Co. These notes were. all executed more than five years prior to the filing of the bill, but between the dates of their maturity and the bringing of the suit less than five years had elapsed. They were for different amounts, running from $725 to $1252, aggregating about $10,000. Prior to the filing of this bill, two of these notes had been assigned by said payees, Lucius Clark & Co., to the complainant Woolverton, four to the complainant The Northwestern National Bank of Chicago, and six to complainant Charles A. Clark. It is alleged in said bill, that when said notes were executed, and the indebtedness for which they were given contracted, the defendant George H. Taylor was director and president, and the said William H. Longley was director and treasurer, of said corporation, and at said time the indebtedness of said corporation exceeded its capital stock of $50,000 to the extent of $100,000, to which said Taylor and Longley, as such directors and president and treasurer, assented. It is also alleged in said bill that said corporation is insolvent, and has ceased to do business.

The Statute of Limitations having been set up by defendants, by way of demurrer to the bill, complainants, by leave of court, filed an amendment thereto, in which they alleged that they had no knowledge of the fact that the indebtedness of the said corporation exceeded its capital stock, until its. financial failure and refusal to pay its debts, February 28, 1883, and that if any cause of action accrued to them at the date of said notes, the holders of the same at that time, and the complainants since, had no knowledge of the existence of such cause of action, which was fraudulently concealed from. the holders of said notes by said defendants until February 28, 1883. To the bill as thus amended, defendants again de-

murred, alleging, as special cause therefor, that it appeared upon the face of the bill that the cause of action sought to be enforced against them did not accrue within two years, nor within five years prior to the commencement of the suit. The Superior Court sustained the demurrer, and dismissed the bill at complainants' costs. The Appellate Court for the First District affirmed that decree, and complainants below again appealed.

The section of the statute under which the bill is filed is as follows: "If the indebtedness of any stock corporation shall exceed the amount of its capital stock, the directors and officers of such corporation assenting thereto shall be personally and individually liable for such excess to the creditors of such corporation." No question is made as to the sufficiency of the bill to charge appellees under this section had it been filed in apt time. The sole question for decision is, do the facts stated in the bill bring the cause of action within the bar of the Statute of Limitations.

The demurrer is based upon two propositions,—viz.: First, the liability of appellees, if any exists, is for a statutory penalty, the cause of action against them accruing immediately upon their assenting to the excessive indebtedness, and therefore the two years' bar, under section 14, chapter 83, of the Revised Statutes, entitled "Limitations," was complete when the bill was filed; second, although the liability is not penal, the cause of action accrued at the date of contracting the excessive indebtedness, and therefore the five years' bar under that clause of section 15, chapter 83, which provides that all civil actions not otherwise provided for shall be commenced within five years next after the cause of action accrued, had run before the bill was filed. To the first of these propositions appellants reply, the action is not for the recovery of a statutory penalty; and to the second, that the liability not being penal, the cause of action did not accrue until said notes became due, and therefore five years had not run when the bill was filed.

A penal statute is defined to be "one which imposes a forfeiture or penalty for transgressing its provisions, or for doing a thing prohibited." (Potter's Dwarris on Statutes, p. 74.) A penalty "is in the nature of punishment for the non-performance of an act or for the performance of an unlawful act. It involves the idea of punishment, whether enforced by a civil or criminal procedure." Anderson's Dictionary of Law, 763.

In the absence of statutory prohibition, it is not unlawful for the officers of a corporation to contract debts in excess of its capital stock. Unless restricted by statute, corporations, as individuals, may contract debts to the full extent of their credit, without reference to the amount of their capital stock. Neither is it, under all circumstances, bad management in a corporation to contract debts in excess of the amount of its capital stock. Its assets may be of such value as to give it credit, and warrant the incurring of liabilities far beyond that amount. While statutes in some States, by different forms of language, limit the right of such officers to contract indebtedness beyond prescribed limits, in others no restriction whatever has been enacted, and in many of those in which a limit is prescribed, the indebtedness which may be contracted is not limited by the amount of capital stock, but may equal twice or three times that amount. If, therefore, such enactments are to be understood as indicating that it is deemed unwise to allow corporations to incur liabilities beyond a prescribed limit, it must be admitted that the sentiment is by no means harmonious as to where the limit should be placed. These statutes do not therefore indicate, as contended by counsel for appellees, that legislatures have considered it bad management in the affairs of a corporation to contract debts beyond the amount of its capital stock. Section 16 of our statute does not prohibit the contracting of indebtedness in excess of capital stock, neither does it, in terms, inflict a penalty for so doing. Therefore a prohibition can not be implied, and to say, as counsel insist should be done, that the assenting is

made unlawful by the infliction of a penalty, is to assume the very question controverted.

While it is true that statutes of other States making officers of corporations individually liable for contracting debts beyond a prescribed limit have been held to be penal, the language of those statutes will be found materially different from ours, and, so far as we have been able to ascertain, expressly prohibit the incurring of liabilities beyond certain limits fixed. In *Horner et al.* v. *Henning et al.* 93 U. S. 228, the Supreme Court of the United States, in passing upon an act of Congress regulating corporations in the District of Columbia, the language of which is almost identical with that of our statute, it was held that the act was not penal, for reasons which we think unanswerable. We followed that decision in *Low* v. *Buchanan,* 94 Ill. 76, in holding that the liability created by section 16 could only be enforced in chancery, and this is, in effect, deciding that the action is not for the recovery of a penalty. "It is a universal rule, in equity, never to enforce either a penalty or a forfeiture." 2 Story's Eq. Jur. sec. 1319 ; *Queenan* v. *Palmer,* 117 Ill. 619.

In Morawetz on Corporations (vol. 2, sec. 908,) it is said : "It is not always quite clear what the courts mean to express by saying that statutes of this character are penal, and that they impose upon the directors a penal liability. The liability of directors under such a statute is undoubtedly not the result of a contract between the directors and the creditors of the corporation; but that is evidently not what the courts mean to express. The liability of directors to creditors for a tort, or a misapplication of corporate funds, or a breach of trust, does not arise out of contract; yet the courts would certainly not call this a penal liability, or refuse to enforce it because it arose under the laws of a foreign State. Nor is the liability of the directors under these statutes penal, in the sense in which the word penal is used in criminal law. It is not a penalty or fine imposed by the State for the infraction of

public law. The liability of the directors is, both in form and substance, a private obligation, similar, in many respects, to that of sureties. It is imposed by the legislature partly for the purpose of inducing the directors to do their prescribed duties, and partly for the purpose of securing the company's creditors from losses caused by those who have control over the company's funds. The statutes imposing this liability establish a new rule of private right,—a rule which, although unknown to the common law, may be founded on sound principles of justice and expediency."

In *Neal* v. *Briggs*, 12 Ga. 104, it is directly held, that a provision in the charter of a corporation prohibiting the contracting of debts in excess of three times the amount of the capital stock paid in, is not penal, within the statute of that State limiting the bringing of penal actions to a period of six months.

We are clearly of the opinion that this suit can not be held to be a suit for the recovery of a penalty, within the meaning of section 14 of our Statute of Limitations.

This view does not conflict with that expressed by the Appellate Court for the First District, but it was there held that although the statute is not penal, still the cause of action authorized by it accrues immediately upon the officers assenting to the excessive indebtedness; and hence, in this case, the five years' bar was complete when the bill was filed. In this view we do not concur. We are unable to perceive upon what legal principle it can be maintained that the liability of appellees, though not penal, accrued at the date of the execution of the notes in suit. The object of such statutes, says Thompson, in his work on the Liability of Officers and Agents of Corporations, (sec. 20, p. 456,) "is to afford creditors of corporations better security for their debts." And again, in section 23, he says: "By the analogy of cases which relate to the liability of shareholders who are not directors, it would seem clear, in the absence of anything in the statutes importing the contrary, that a creditor could not proceed against the officers of a cor-

poration without first having obtained a judgment against the corporation. This would seem to be true for stronger reasons than in the case of stockholders, for the liability of the directors is like that of a surety, *stricti juris*, and obviously ought not to attach so long as the debt can be made out of the company. And so it has been held under a statute charging the directors of an insurance company with liability for losses on policies issued after the company was under a liability to an amount equal to its capital stock." See, also, 1 Morawetz on Private Corp. sec. 908, *supra.*

Even in cases holding such enactments penal in their nature, the fund arising therefrom is not treated as a penalty, but rather as a fund for the indemnity of all creditors, the measure of recovery being limited by the excess assented to. (*Sturges* v. *Benton*, 8 Ohio, 215; 72 Am. Dec. 587.) In *Horner et al.* v. *Henning et al. supra*, it is said: "But it is not readily to be believed that Congress intended to make the trustees liable *beyond the debts of the bank which it failed or refused to pay;* yet, if the excess is a penalty, it would be no defense for the directors to plead that the bank was ready and willing, and had never refused, to pay when demand was made. In fact, while the bank, outside of its capital stock, may have had $1,000,000 in its vaults ready to pay, a single creditor who had never demanded his money of the bank could sue the trustees." The act is also spoken of in that opinion as being "for the benefit of the creditors generally, when the bank proves insolvent." And again it is said, in the same case: "We are of opinion that the fair and reasonable construction of the act is, that the trustees who assent to an increase of the indebtedness of the corporation beyond its capital stock are to be held guilty of a violation of their trust; that Congress intended that so far as this excess of indebtedness over capital stock was necessary, they should make good the debts of the creditors who had been the sufferers by their breach of trust; that this liability constitutes a fund for the benefit of all the

14—132 Ill.

creditors who are entitled to share in it, in proportion to the amount of their debts, so far as may be necessary to pay these debts. The remedy for this violation of duty as trustees is, in its nature, appropriate to a court of chancery. The powers and instrumentalities of that court enable it to ascertain the excess of the indebtedness over the capital stock, the amount of this which each trustee may have assented to, and the extent to which the funds of the corporation may be resorted to for the payment of the debts; also, the number and names of the creditors, the amount of their several debts, to determine the sum to be recovered of the trustees and apportioned among the creditors in a manner which the trial by jury and the rigid rules of common law proceedings render impossible."

In *Low* v. *Buchanan, supra,* we said: "After a careful consideration of the matter, we have reached the conclusion that directors and officers of stock corporations who incur liabilities under the section in question, become bound and answerable, not to some particular creditor, but, in the language of the act, to the *creditors,*—that is, all the creditors. This construction puts all the creditors upon a perfect equality, and is in conformity with the express words of the act. It was doubtless the object and purpose of the legislature that all claims arising under the provisions of the section in question should be regarded in the nature of a trust fund, to be collected and divided *pro rata* among all the creditors. And if we are correct in this conclusion, it is quite manifest that this distribution of the fund could only be made in a court of equity." We also there held, that all that had been said in *Horner et al.* v. *Henning et al.* as to the appropriateness of a chancery proceeding under the act of Congress, applied with equal force to our statute.

We think it clear that the liability of corporation officers under section 16, *supra,* is not an absolute liability, but is only to be enforced to the extent that the corporation fails to pay its creditors,—that the liability is in the nature of security to

all the creditors of the corporation. If this conclusion is correct, the citation of authorities is unnecessary to show that no action can be maintained against the officers until the corporation is in default. For aught that appears in this bill, George H. Taylor & Co., at the time these notes were given, had assets representing not only its $50,000 capital stock, but the full amount of its excessive indebtedness,—in other words, was perfectly solvent, ready and willing to pay all its debts as they matured. Suppose the payees of these notes had then filed a bill against appellees to enforce payment, would it be pretended, in the light of *Horner et al.* v. *Henning et al. supra,* that it could have been maintained? Could not the defendants have answered, that the corporation was solvent, "ready and willing, and had never refused to pay when demand was made?"

It is said, however, that if the cause of action does not accrue until the maturity of the debt, a bill can not be maintained until all the debts of the corporation are due, because the liability is for the benefit of all creditors, and must be enforced by a single bill, and therefore, it is argued, the remedy becomes impracticable, or may be so rendered by the officers contracting debts to mature at a remote period in the future. It does not follow that because the creditor who files the bill must allege and prove the corporation in default as to his debt, that he can not maintain the bill until all debts against the corporation are due. On the allegations of the bill in question, there can be no doubt as to the power of a court of chancery to bring before it the corporation, all its officers who had assented to excessive indebtedness, as well as all its creditors, and, in the language of Justice MILLER, which we have said is equally applicable to our statute, "ascertain the excess of the indebtedness over the capital stock, the amount of this which each trustee may have assented to, *and the extent to which the funds of the corporation may be resorted to for the payment of the debts;* also, the number and the names of the creditors, the

amount of their several debts, *to determine the sum to be recovered of the trustees* and apportioned among the creditors."

But if the difficulties supposed to exist under the construction that the right of action accrues only on the maturity of the indebtedness were real, they could not be avoided by holding that it accrues at the date of the contract. The statute certainly does not mean that the officers shall only become liable for one act of assenting to excessive indebtedness during the life of the corporation. The amount in excess may continue to be increased from time to time, by different officers, running over a period of years. By a single bill, for the benefit of all the creditors, against all these officers, that excess may be recovered and made a fund for the payment of all the debts. From what date would the Statute of Limitations begin to run in such a case? The officers, if liable at all, are liable to all the creditors of the corporation,—those existing prior to the contract creating the excessive indebtedness, those whose debts are created thereby, and also those who may afterwards become its creditors. As to the subsequent creditors, could it be said the cause of action accrued before they became creditors? The action must be for their benefit, as well as that of all others, and yet they may not have become creditors of the corporation until more than five years after the first assenting to excessive indebtedness.

The statute not being penal, but intended to afford additional security to creditors, it should be so construed as to effectuate that purpose without imposing punishment upon the officers or hardship upon the creditors. To hold that the officers may be sued the moment they assent to the excessive indebtedness, would operate by way of punishment, by compelling them to pay debts long before they became due. On the other hand, that construction would operate harshly on creditors. They have not the means of knowing that the indebtedness of a corporation has been allowed to exceed its capital stock, and may, in good faith, give credit to a perfectly

solvent, and even wealthy, corporation, for a term of years. By all reasonable rules of business they can not be required to look to the collection of their debts until they are due, and yet, under the rule contended for, should they find it necessary to resort to this statutory liability of officers, they may be confronted with the Statute of Limitations, and told that its bar became complete long before the maturity of the debt sought to be recovered.

We hold that the cause of action set forth in this bill did not accrue until the maturity of the notes therein described; that the action is not for the recovery of a penalty; and five years between the date of the maturity of the first of said notes to fall due and the filing of the bill not having intervened, the action was not barred. The demurrer to the bill should therefore have been overruled.

*Judgment reversed.*

BAILEY, J., and SHOPE, C. J., dissenting.