The Chicago Riding Club for use of Maurice Klein, Appellant, v. Sewell L. Avery et al., Garnishees, Appellees.

**Gen. No. 41,044.**

Heard in the third division

420

of this court for the first district at the December term, 1939. 
Opinion filed May 22, 1940. Rehearing denied June 14, 1940.

LIVINGSTON E. OSBORNE, of Chicago, for appellant; HENRY McGURREN, of Chicago, of counsel.

D'ANCONA, PFLAUM & KOHLSAAT, JOHN E. TIMM, FOLLANSBEE, SHOREY & SCHUPP, BERNARD ALLEN FRIED, WOODS, WOODS, BROWN & SALTER, WILEY W. MILLS, McNAB, HOLMES & LONG and VICTOR G. NARDI, all of Chicago, for appellees; CHARLES H. BLUMENFELD, ELSDON C. SMITH, WALLACE B. KEMP, COBERT ETSHOKIN and NED SILVERMAN, all of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

From the statement of claim in the briefs it appears that on April 29, 1938, the plaintiff commenced an action against the Chicago Riding Club, a corporation, on 50 first mortgage $1,000 real estate gold bonds of the Chicago Riding Club, a defendant, and obtained a judgment on that date by confession in the sum of $54,126.64. Thereafter the plaintiff instituted garnishment proceedings on September 1, 1938, under § 1, ch. 62, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 109.284] against Leonard Florsheim, Joseph Regenstein, Frank J. Cox, S. O. Johnston, John Baumgarth, Frank G. Croissant, Wm. C. Hollister, Avery Brundage, George F. Nixon and John C. Bowers, hereinafter referred to as garnishee defendants.

The plaintiff alleges that he had just reason to believe that the garnishee defendants were indebted to the defendant for dues and house accounts accrued and incurred while members of the defendant, and that he was entitled to such indebtedness under the statute. To this claim the garnishee defendants filed answers and amended answers individually and respectively, and the same were traversed by the plaintiff.

In the answer of the garnishee defendants they stated

that each of the garnishee defendants owned a $1,000 membership bond of the Chicago Riding Club, which they claimed as a setoff against any alleged indebtedness of theirs against the Chicago Riding Club; that the statute of limitations had run as to any indebtedness of theirs to the Chicago Riding Club; that because the Chicago Riding Club, a corporation not for profit, was dissolved on June 1, 1938, the plaintiff had no right, license or authority to maintain any proceeding against them; further, that the Chicago Riding Club ceased to function as a private club during 1933, 1934 and 1935, and thereafter they were not liable to the Chicago Riding Club for any dues assessed against them; and the plaintiff was precluded from bringing this action because of the terms and conditions contained on the face of the fifty $1,000 first mortgage real estate gold bonds of the Chicago Riding Club upon which he confessed judgment.

During the course of the trial it was stipulated and agreed between the parties that the Chicago Riding Club was incorporated as a corporation not for profit June 30, 1923 and was dissolved June 1, 1938; that the bylaws of the Chicago Riding Club are as set forth in exhibit B, and that at a special meeting of the bond members of the Chicago Riding Club held June 29, 1926, the sum of $150 was duly fixed as the amount of annual dues to commence July 1, 1926; that the county treasurer was appointed receiver of the Chicago Riding Club on June 12, 1933, qualified and took possession.

It further appears from this stipulation that the garnishee defendants, with the exception of Avery Brundage, signed applications for life membership bonds in the Chicago Riding Club, and that the bonds under which the plaintiff obtained a judgment against the Chicago Riding Club were first mortgage real estate bonds, and at the close of the evidence the court found the issues in favor of the garnishee defendants and

ordered that all of the garnishee defendants be discharged and dismissed at plaintiff's costs. It is from this judgment order that the appeal is in this court.

All of the garnishee defendants were bond members of the Chicago Riding Club and all had loaned $1,000 to the Club at the time of their association as members, receiving as evidence of the loans, bonds for $1,000, due on or before January 1, 2000 A. D. Thereafter being owners of such bonds, they further contend that they were entitled to set off the obligation represented thereby against any claim asserted by the Chicago Riding Club, or by the plaintiff, who sought to garnishee the debt claimed to be due to the Chicago Riding Club, amounting to over $8,000. This right of setoff is expressly granted to them, and they cite in support of their contention § 13, ch. 62, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 109.296].

"DEDUCTIONS AND SET-OFFS OF GARNISHEE.] Every garnishee shall be allowed to retain or deduct out of the property, effects or credits in his hands all demands against the plaintiff, and all demands against the defendant, of which he could have availed himself if he had not been summoned as garnishee, whether the same are at the time due or not, and whether by way of set-off on a trial, or by the set-off of judgments or executions between himself and the plaintiff and defendant severally, and he shall be liable for the balance only after all mutual demands between himself and plaintiff and defendant are adjusted, not including unliquidated damages for wrongs and injuries: . . ." Also the opinion of our Supreme Court in the case of *Levinson v. Home Bank & Trust Co.,* 337 Ill. 241, wherein the court said:

"It is a well settled rule of statutory interpretation that where the language used is plain and certain it must be given effect by the courts. The province of the courts is not to legislate but to interpret. We cannot read out of the statute words which the legislature has

placed therein, any more than we can read into the statute words which are not within the manifest intention of the legislature as determined by the statute itself. (*Downs v. Curry,* 296 Ill. 277; *Sup v. Cervenka,* 331 id. 459.) In the section of the Garnishment act above quoted the legislature has used the words, 'whether the same are at the time due or not.' This phrase was obviously intended to have some meaning, and it cannot be disregarded or treated as a nullity. It is clear and unambiguous. It states definitely and clearly that a garnishee shall be allowed to deduct out of the property in his hands all demands which he may have against the plaintiff and the defendant, whether the same are at the time due or not.''

The plaintiff answers this proposition by arguing that in effect the members are attempting to make themselves creditors of the Chicago Riding Club so as to defeat the claim of a just creditor, who invested in first mortgage bonds of the Chicago Riding Club on the representation that his investment would be secured by the property of the club, and that all other bond obligations of the club would be subordinate to his. Of course, when we come to consider the suggestion offered, the first mortgage bonds were prior liens on certain real estate in Chicago, and in respect to that security it is, of course, true that other obligations of the Riding Club were subordinate. The security of the trust deed was limited however to the real and personal property thereby conveyed.

It is suggested by the defendants that the Chicago Riding Club was dissolved on June 1, 1938, and therefore the present garnishment proceedings cannot be maintained. They urge that it is an elementary principle of the law of garnishment that in order for a judgment to be entered for the plaintiff in the proceedings, it is a condition precedent that a right of action exists in favor of the judgment debtor, against the garnishee defendant.

The plaintiff in the action, however, calls our attention to the dissolution on June 1, 1938, as set forth, of the Chicago Riding Club, a corporation organized not for profit, judgment debtor, and contends that it did not constitute a bar to plaintiff's maintaining the garnishment proceedings, and urges that under par. 157.94 of ch. 32, sec. 94, "Corporations," Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 32.096] (Ill. St. Bar Ass'n Ed.) provision is made for the survival of a remedy after dissolution, and quotes from this particular paragraph as follows:

"SURVIVAL OF REMEDY AFTER DISSOLUTION. The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the Secretary of State, or (2) by the decree of a court of equity when the court has not liquidated the assets and business of the corporation, or (3) by expiration of its period of duration, shall not take away or impair any remedy given against such corporation, its directors, or shareholders, for any liability incurred prior to such dissolution if suit thereon is brought and service of process had within two years after the date of such dissolution. Such suits may be prosecuted against and defended by the corporation in its corporate name."

It appears from one of the cited cases entitled *Schneider v. Autoist Mut. Ins. Co.*, 346 Ill. 137, the plaintiff brought an action of attachment in the superior court of Cook county on a judgment rendered in his favor by a New York court against the defendant, Allen, and summoned the Autoist Mutual Insurance Co. as garnishee. The court after reviewing the entire record, discharged the garnishee, for the reason that since Allen had not complied with the terms of the policy issued by the garnishee, he could not maintain an action thereof, and that inasmuch as the plaintiff had no greater rights against the garnishee than did Allen, the plaintiff was necessarily barred. Upon a like question in the case of *Supreme Sitting Order of the Iron*

*Hall v. Grigsby,* 178 Ill. 57, the plaintiff brought an action of attachment against the Supreme Order Iron Hall and summoned as garnishee one Grigsby. It appears in the record that the garnishee had in his hands as cashier of the local lodge of the Supreme Order Iron Hall, a certain sum of money, but that the "Hall" was not qualified to transact business in the State of Illinois. The court in discharging the garnishee, held in effect that because the "Hall" was not authorized to transact business in the State of Illinois it could not have maintained an action against the garnishee, Grigsby, and that the plaintiff stood in no better position. In specifically discussing the subject, the court said: "The law is well settled in this State that in garnishment proceedings the creditor can only recover such indebtedness as can be recovered in an appropriate action in the name of the attachment or judgment debtor against the garnishee. . . . Here, as we have seen, no right of recovery existed in favor of the Indiana corporation, the judgment debtor, and under the rule laid down in the authorities cited, no recovery could be had by Sumpter, the creditor of the corporation." And for the reasons stated the Chicago Riding Club could not maintain an action against the garnishee defendants, one of which is the fact that the Club had been legally dissolved on June 1, 1938, prior to the time that the present garnishment proceedings were instituted.

Chapter 32, sec. 14 of the General Corporation Act of 1919, Cahill's Ill. St. 1927, specifically provided that:—"All corporations organized under the laws of this State, whose powers may have expired by limitation or otherwise, shall continue their corporate capacity for two years for the purpose only of collecting debts due such corporation and selling and conveying the property and effects thereof. Such corporations shall use their respective names for such purposes and shall be capable of prosecuting and defending all suits at law or in equity."

Subsequently the Business Corporation Act of 1933, which act is now in force, specifically repealed the Act of 1919, and contains no provision which would authorize the institution of proceedings of any kind by a corporation after it has been dissolved.

It does appear from ch. 32, par. 157.94, sec. 94 of the present Business Corporation Act, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 32.096] that suits may be instituted against a corporation, its directors or shareholders, at any time within two years after the dissolution of the corporation, but the statute is silent and no provision is made which authorizes a dissolved corporation to maintain any form of action whatever after its dissolution. In this State the courts have not as yet been called upon to specifically point out the distinction upon that subject, but in the case of *Billiard Table Mfg. Corp. v. First-Tyler Bank & Trust Co.,* 16 F. Supp. 990, 1936, the District Court of the Northern District of West Virginia was specifically called upon to decide whether or not an Illinois corporation could maintain an action after its legal dissolution. From the facts as they appear in that case the plaintiff instituted suit in the District Court of the Northern District of West Virginia on February 28, 1934. While the case was pending the plaintiff corporation was dissolved upon action of the Attorney General of the State of Illinois, by a decree entered in the superior court of Cook county. The defendant then tendered and filed two special pleas in bar to the further prosecution of the action, alleging the plaintiff's dissolution and denying the plaintiff's right under the Illinois law to further prosecute the suit. To these pleas the plaintiff filed special replications, citing the provisions of sec. 163 of the 1933 Illinois Business Corporation Act [Cahill's Ill. St. 1933, ch. 32, ¶ 158(5)] in avoidance of the effect of its dissolution in Illinois. To each of these replications the defendant demurred, and the case was before the court on the specific question as to whether

or not the fact that the plaintiff corporation had been dissolved barred the further prosecution of the proceedings. The court sustained the demurrers to the plaintiff's special replications and dismissed the suit, and upon the question before the court, said:

"Before the passage of the 1933 Illinois Business Corporation Act, an Illinois corporation had the right and power to collect debts due it and to maintain suits in its corporate name for the same for a period of two years after its date of dissolution. Illinois Business Corporation Act of June 28, 1919, in force July 1, 1919, Laws Ill. 1919, p. 320, sec. 14 (Smith-Hurd Ill. Stats. c. 32, § 157.94 note). However, in the enactment of the 1933 Illinois Business Corporation Act this right and power was withdrawn by the Legislature by the omission of the former provisions from the new act. Illinois Business Corporation Act, in force July 13, 1933, § 94 et seq., Acts of General Assembly of State of Illinois 1933, . . . (Smith-Hurd Ill. Stats. c. 32, § 157.94 et seq.). In the 1933 act, upon application of any interested party, the assets of any corporation undergoing involuntary liquidation may be collected by the appointment of receivers to collect the same pending dissolution. Illinois Business Corporation Act, in force July 13, 1933, sections 86 and 87."

". . .

"In the present case, neither the right of action nor the action now pending was in being at the date of the passage of the 1933 act. The plaintiff's method of procedure to sue subsequent to its dissolution in its corporate name was then nothing more than a possibility or contingency; it was inchoate so to speak. At the passage date of the 1933 act the plaintiff had not even a matured or vested form of procedure. Therefore, the 1933 act effectively removed and replaced the procedural privilege now here contended for by the plaintiff. Inchoate rights generally derived from a statute are lost by its repeal, unless saved by express words

in the repealing section. *Moor v. Seaton,* 31 Ind. 11. In the case of *Virginia & West Virginia Coal Co. v. Charles* (D. C. W. D. Va. 1917) 251 F. 83, at pages 128 and 129, the court clearly demonstrates why it holds that inchoate precedural rights are not within the saving clauses of repealing statutes.

"Careful analysis reveals that it has not been the 1933 act which has put the plaintiff in its present predicament in this action, but rather has it been the failure of the plaintiff to maintain its corporate status and its neglect in securing proper liquidation of its assets by the appointment of a receiver upon its dissolution in Illinois. To permit the plaintiff to further maintain this action in its corporate name even though now dissolved, would be to permit a privilege of procedure replaced by the Illinois Legislature. It would be to permit the plaintiff to collect its assets without accounting to the state of Illinois for back and past-due license and franchise taxes, collection of which out of corporate assets is provided by the 1933 act upon appointment of receivers; it would be to permit the plaintiff a mode of procedure found inexpedient by the state of Illinois, and, as such, repealed; it would be to allow the plaintiff a right 'accrued or established' by its own derelictions and neglect."

It appears in plaintiff's brief and argument that the plaintiff takes the position that the Chicago Riding Club was only a nominal party plaintiff, and that even though it could not have maintained an action against the garnishee, the plaintiff nevertheless is not barred.

The plaintiff also contends that the garnishment proceedings being in the nature of a proceeding *in rem* and not *in personam,* the fact that the judgment debtor has been dissolved is of no legal importance, and it is admitted by the defendants that our courts have on numerous occasions made the statement that garnishment proceedings are proceedings *in rem* rather than proceedings *in personam,* no case can be cited which would

warrant the entry of a judgment against a garnishee defendant, when, as a matter of fact, the judgment debtor had no action and no right of recovery against the garnishee defendant.

The plaintiff in seeking to maintain its action, calls the court's attention to par. 157.94, ch. 32, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 32.096]. This section of the statute specifically deals with survival of remedies against the corporation, its directors or shareholders, but the present garnishment proceedings are not against the corporation, its directors or shareholders, but, as contended by the defendants, are specifically in favor of the corporation for the use of the judgment creditor and against the garnishee defendants.

From the fact that the Chicago Riding Club was dissolved on June 1, 1938, the trial court did not err in discharging the garnishee defendants and dismissing the proceedings.

There is one other question which we think is important, and that is, it appears from the plaintiff's fifty $1,000 first mortgage real estate gold bonds that there is a provision in the bond which has a bearing upon the institution of this garnishment proceeding. The provision provides:

"No recourse shall be had for the payment of the principal or interest of this bond against any incorporator, member, director, or officer of the Chicago Riding Club, past, present, or future, either directly or through the club, by virtue of any statute or constitution, or by the enforcement of any assessment, or penalty, or otherwise howsoever, any and all liability of the incorporators, members, directors and officers of the club being hereby waived and released by each successive holder of this bond." The plaintiff, of course, is chargeable with the provisions of the real estate bonds which are owned by him, and the language being broad in its terms, it appears that the plaintiff is barred from any right of recovery against any of the incorporators,

members, directors and officers of the Club, and that being so, the plaintiff's suit against the members as garnishees, is barred by the provision just quoted. That of itself would prevent recovery of the judgment against the garnishee defendants.

Other questions have been called to our attention, but in view of what we have said in this opinion, we believe the court did not err in entering a judgment for the garnishee defendants and dismissing the suit.

For the reasons stated the judgment is affirmed.

*Judgment affirmed.*

Denis E. Sullivan, P. J., concurs.

Burke, J., specially concurring: I agree with the conclusion reached but not with all that is said.